FOURNET, Justice.
The National Bank of Commerce of New Orleans as the executor of the Succession of Mrs. Josephine Arias Candebat is appealing from the judgment of the lower court ordering that the claim of John H. White in the amount of $1,250 be placed on the account filed by it in the succession proceedings as compensation in quantum meruit for services rendered by the claimant over a period of 286 weeks prior to the *998 decedent’s death, she having failed to carryout her promise to compensate him in her will. Answering the appeal in this court the appellee seeks to have the judgment of the lower court awarding him $1,250 for these services amended hy increasing the amount to the $2,860 sued for.
The services alleged to have been rendered by the opponent to the bank’s final accounting as executor are that beginning with November 1938 and continuing up until the time of Mrs. Candebat’s death on July 18, 1944, he agreed to and did render her innumerable services, including driving her to collect dividends and interest from various homesteads in which she 'had investments at least twice a year, to attend to insurance matters concerning her home and furnishings, to pay her city taxes, to pay her state taxes, to the doctor’s office for medical treatment, to hospitals for ex-ray treatment, to various banks; handling some personal correspondence arid looking into certain prospective investments at her behest; cutting weeds on her property during the years 1939 and 1943 as well'as the yearly filing of her homestead exemption claims with the office of the assessor; supervising the painting of her home; entertainment of a friend of the decedent’s at her-request; and taking her for automobile rides and on other outings on the average of several times a week from 1939 to 1943, many of these rides consisting of visits to places of amusement at night so that the decedent might indulge in her only real diversion, the playing of keno and other games of chance.
It is the opponent’s contention that in remuneration she promised to remember him in her will and that she on one occasion actually showed him a will wherein'she leit him $5,000 rjof the stock in the Third District Homestead Association and since she died leaving two wills, in neithef of which was such a provision found, he is entitled to recover for these services on a quantum meruit basis, the value placed on the services rendered by him being $10 a week for a period of 286 weeks, or $2,860.
In answer, and for lack of information,, the executor denied all of the claims made by the opponent for services rendered, with, the exception of his writing a letter to a friend of Mrs. Candebat’s in California and the occasion on which he accompanied Mrs. Candebat’s brother on a trip to the bank to get her homestead books and to the various homesteads to collect dividends and. interest due. The executor also specially pleaded the prescription of 1, 3, and 5 years-
This being a claim against a deceased person, unlike ordinary cases requiring the plaintiff to prove his claim if more than $500 “at least -by one credible-witness, and other corroborative circumstances” (Article 2277 <of the Revised Civil Code), it can only be established by the “testimony of at least one credible witness-of good moral character, besides the plaintiff,” that is, if such action has been brought within 12 months after the death of the *1000 decedent, otherwise parole evidence is not ' admissible to prove the claim. Act 207 of 1906 as amended by Act 11 of 1926. See, Succession of DeLoach, 204 La. 805, 16 So.2d 361; Reuter v. Reuter’s Succession, 206 La. 474, 19 So.2d 209.
In support of his claim the defendant testified substantially in accordance with the allegations contained in the petition setting forth his claim and in corroboration thereof he relies on the testimony of his daughter and the relatives of the decedent, i.e., her sister, Mrs. Thomas A. Gilmore, her brother, George Arias, her brother-in-law, Thomas A. Gilmore, and that of her physician, Dr. E. L. Leckert, all of whom appeared as witnesses for the executor of the estate.
The opponent’s daughter testified that on many occasions she had accompanied her mother and her father, and her father alone after the mother’s death in 1943, when he took the decedent to various places, on several occasions being in the •car when he dropped the decedent at .gambling casinos in Jeíferson and St. Bernard parishes. She' also stated that on several occasions the decedent had expressed .gratitude for the services her father was rendering and told her she would take care ■of him therefor.
The decedent’s relatives who testified on ■behalf of the estate not only do not deny the opponent did render the services as claimed by him during these years but they, in fact, readily admit he did render them, their testimony being more for the purpose of minimizing the extent of the services, since it is their contention “that whatever little services were rendered by Captain White to Mrs. Candebat- were the result of the friendship which existed between them and were rendered by Captain White out of courtesy to Mrs. Candebat, and not only was he not to be compensated therefor, but he, on each occasion, volunteered his services to Mrs. Candebat.” ,
The only testimony offered to support this contention is that of the decedent’s sister, brother, arid brother-in-law, who will be the beneficiaries in the event the opponent’s claim is not recognized. Without detailing their testimony on this phase of the case, suffice it to say if is very unimpressive and does not support their view.
While the record shows Mrs. Candebat’s family and Captain White’s family were friends and neighbors, there is nothing that even indicates there ever existed such a friendship between the opponent and de.cedent as would suggest an obligation on ■the part of the opponent to render the services he did. On the contrary, the record shows the opponent and the decedent had not even seen each other for some 15 or 20 years prior to her return to make New Orleans her home after her husband’s death in 1938 with the exception of the one occasion during a visit to the city in 1937 when she looked him up. It was only after her husband’s death that a close friendship seems to have been formed between the *1002 two. This is not only testified to by the opponent but is corroborated by both the -decedent’s brother and sister, although their implication is that the opponent was .merely trying to play up to her, “work an -affection” on her is the way it is expressed by the sister. At that time the decedent was not a well woman. She was afflicted with an illness that required constant medical attention, necessitating frequent visits to the doctor’s office and to hospitals for ex-ray treatment, as well as her hospitalization on occasions, and despite the fact that her brother-in-law who lived in her ’.home with her owned an automobile she sought out and availed herself of the use of Captain White’s automobile and his time to facilitate her in getting about to her bank •for her pass books in her bank box, to visit various banks and homesteads to collect interest and dividends due her on her investments twice a year, to the City Hall to ■pay her city taxes, to the office of the State Tax Collector to pay her state taxes, to the doctor’s office, to the hospital for ex-ray treatments, as well as to places of amusement where she could enjoy her favorite pastime (playing games of chance) and on other outings along the lake front for dinner and the drive, her brother-in-law testifying he only took her for ex-ray treat■ments two or three weeks, or about 10 or 15 times, and only to the doctor’s office and -out gambling on “several” occasions, although the record shows she was treated •with ex-ray 76 times and visited the doctor’s office 34 times and it being conceded she went to Jefferson and St. Bernard parishes to visit the games of chance almost every night she was in town and not incapacitated. We think that under this factual situation, especially when we consider the disparity between the ages of the opponent and decedent, he being .25 years younger than the decedent, who was 68 at the time of her death while he was 43, it is most unlikely that the services performed by him were done merely because of their alleged friendship.
The appellant now concedes there is no valid basis for the 5 year prescriptive plea, and from the conclusion we have reached there is likewise no legal basis for the 1 and 3 year prescriptive pleas, for the opponent’s claim was not due or demand-able until after Mrs. Candebat’s death, at which time the prescription began to run, this opposition being filed within a year following her death. See, Succession of Oliver, 184 La. 26, 165 So. 318.
This brings up for our determination the amount to be awarded the opponent, the contention of the executor being that this is a claim based on a quantum meruit and there is no evidence to support the value of such services.
In his petition and testimony the opponent places the valuation of $10 a week on his services and, there being no countervailing evidence, we think the nature and extent of the services rendered are sufficient corroboration of their value to justify a judgment in this case. In view of the *1004 evidence in the record, however, showing that during the period the opponent alleges he performed these services for the decedent she was away from the city on trips for periods ranging from days and weeks to months, aggregating in all about 7 or 8 months, and other testimony tending to support the contention of the executor as to the extent of the services rendered, we do not feel inclined to disturb the trial judge’s award in the amount of $1,250.
For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.
PONDER, J., absent.